IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SPERLING & SLATER, P.C., | ) | |
| Plaintiff, | ) | 12 C 761 |
| v. | ) | |
| HARTFORD CASUALTY INSURANCE COMPANY, | ) | Judge Virginia M. Kendall |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sperling & Slater, P.C. (the "Firm"), filed suit against its insurer Hartford Casualty Insurance Company for declaratory judgment that Hartford wrongfully denied coverage to the Firm for loss incurred by one of the Firm's partners, Bruce Sperling, when a secretary forged his checks to steal $880,000 from his personal bank account. The Firm also brought claims for breach of contract and a violation of 215 ILCS 5/155, seeking compensatory damages, statutory damages and attorneys' fees. Hartford moves to dismiss for failure to state a claim, arguing that the insurance Policy does not cover loss of Sperling's personal funds due to a Firm employee's forgery of checks and unauthorized transfers. For the following reasons, the Court grants Hartford's Motion to Dismiss.

**I. BACKGROUND**

The Firm originally filed suit in the Circuit Court of Cook County Chancery Division on January 6, 2012. Hartford removed the case to this Court on February 3, 2012, pursuant to 28 U.S.C. § 1441. There is no dispute that diversity jurisdiction exists under 28 U.S.C. § 1332 and that

venue is proper under 28 U.S.C. § 1441(a). There is no dispute that the contract is subject to Illinois law. The following facts are from the Firm's Complaint. In deciding the instant Motion, the Court assumes the veracity of the well-plead allegations in the Complaint and construes all reasonable inferences in the Firm's favor. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007).

Sperling is a principal of the Firm and maintains his office at the Firm's premises. The Firm employed a secretary named Crystal Sangiacomo for approximately four years and assigned her for the past two years to work directly with Sperling. Her responsibilities included administering Sperling's personal bank account with Fidelity Investments, which meant reviewing his bank statements, maintaining custody of his blank checks and preparing checks as authorized by Sperling. In December 2009, other Firm employees discovered that Sangiacomo had been taking Sperling's blank checks, fraudulently making them payable to herself and forging their endorsement with Sperling's signature stamp. Sangiacomo did this more than 20 times over the course of a year and a half to the tune of $880,000. On March 8, 2010, Sangiacomo pled guilty to federal bank fraud in violation of 18 U.S.C. § 1344. To date, the Firm and Sperling have mitigated the losses through various sources to recover approximately $360,000 minus the costs of recovery. In accordance with its obligations, the Firm reimbursed Sperling the remaining uncovered losses of approximately $525,000.

The Firm submitted a claim to Hartford in January 2010 for the loss due to Sangiacomo's acts under the Firm's Insurance Policy. The Policy provides coverage, in a policy endorsement called Super Stretch for Law Offices, for "direct physical loss of . . . personal property of others that is in your care, custody or control" under a blanket limit of $250,000. (Doc. 13, Ex. A, Policy, p.

A00105, A.1.d).[1] The Policy also provides coverage, in an endorsement called Employee Dishonesty Coverage, for "any loss from employee dishonesty . . . in addition to any other Limit of Insurance" under a sub-limit of $55,000 that comprises $30,000 under the main Policy, and $25,000 under the Super Stretch. (P. A0004, A0106).

Hartford denied the claim in February 2010. The Firm filed suit and seeks a declaration that the claim is covered by both the Super Stretch for Law Offices endorsement, (Count I), and the Employee Dishonesty endorsement, (Count II), as well as any accompanying compensatory damages. The Firm alleges that Hartford's denial of the claim is a breach of the Policy, (Count III), and that the wrongful denial is vexatious in violation of 215 ILCS 5/155, (Count IV), for which the Firm seeks compensatory damages, statutory damages and attorneys' fees.

## II. STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all the well-pleaded facts alleged in the complaint and construes all reasonable inferences in favor of the non-moving party. *See Killingsworth*, 507 F.3d at 618 (citing *Savory*, 469 F.3d at 670); *accord Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To properly state a valid claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true ... 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To determine whether a complaint meets this standard the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. If the factual allegations are

---

[1] References to the Policy and its Additional Coverages will be cited to as "P. A0_ _ _."

well-plead, the Court assumes their veracity and then proceeds to determine whether they plausibly give rise to an entitlement to relief. *See Id.* at 679. A claim has facial plausibility when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Id.* at 678. In addition, when a plaintiff refers to documents in a complaint that are central to the claims alleged, those documents become part of the pleadings. *See* Fed. R. Civ. P. 10(c); *McCready v. Ebay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006).

## III. DISCUSSION

Hartford moves to dismiss the Firm's claim by arguing that the unambiguous language of the Policy does not provide coverage for the loss of Sperling's personal funds for several reasons. In addition, Hartford argues that it could not have denied the claim in bad faith under 215 ILCS 5/155 because there is no bad faith where there is no wrongful denial.

### A. Illinois Law on Insurance Contracts

"[T]he construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law." *Hurst-Rosche Engineers, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995). The court's objective when interpreting the terms of an insurance policy, which is a contractual agreement, is to determine the intent of the parties. *See Wood v. Allstate Ins. Co.*, 21 F.3d 741, 743 (7th Cir., 1994); *Dash Messenger Serv., Inc. v. Hartford Ins. Co.*, 582 N.E.2d 1257, 1260 (Ill. App. Ct. 1991), appeal denied, 587 N.E.2d 1013 (Ill. 1992). Under Illinois law, a court initially must look only at the relevant language of a policy, "as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Metro Federal Credit Union v. Federal Ins. Co.*, 607 F. Supp. 2d 870, 874 (N.D. Ill. 2009) (citing *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007)). To ascertain the meaning of the policy's words and the intent

4

of the parties, the Court construes the policy as a whole with due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract. *Ind. Ins. Co. v. Pana Cmty. Unit Sch. Dist. No. 8*, 314 F.3d 895, 900-901 (7th Cir. 2002) (citing Illinois law). Illinois law requires that provisions of an insurance agreement be interpreted in the factual context of the case. *Id.* If the contract language is subject to only one reasonable interpretation, a court applies the terms as written. *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 361 (7th Cir. 1987). "When an insurance contract is unambiguous, the court must not consider any evidence beyond the four corners of the policy for construing the contract." *T.H.E. Insurance Co.*, 724 N.E.2d at 192. Moreover, when the contract is unambiguous, it should be enforced as written and the Court should not speculate on the purposes underlying the provision. *Coley v. State Farm Mutual Automobile Insurance Co.*, 534 N.E.2d 220, 222 (Il.. 1989).

In addition, language of an insurance policy "is not considered ambiguous merely because a term is not defined within the policy or because parties can suggest creative possibilities for the term's meaning." *Bd. of Educ. of Maine Twp. High Sch. Dist. No. 207 v. Int'l Ins. Co.*, 799 N.E.2d 817, 823 (Ill. 2003). If the language is susceptible to more than one meaning or is obscure in meaning through indefiniteness of expression, the language is ambiguous. *See Allstate Ins. Co. v. Amato*, 865 N.E.2d 516, 520 (Ill. App. Ct. 2007) (citing cases). Under Illinois law, ambiguous provisions or equivocal expressions whereby an insurer seeks to limit its liability are to be construed most strongly against the insurer and liberally in favor of the insured. *See, e.g. Id.* at 521; *T.H.E. Insurance Co.*, 724 N.E.2d at 192. "[E]ven in doubtful cases, courts should be quick to construe the policy in favor of coverage so that the insured is not deprived of a benefit for which the insured paid." *Dash Messenger Serv., Inc*, 582 N.E.2d at 1260. It is the burden of the insurer to

5

affirmatively prove that an exclusion in an insurance policy applies. *See Pekin Insurance Co. v. Miller*, 854 N.E.2d 693, 697 (Ill. 2006). The liberal standard applicable to determinations of whether an insurer has a duty to defend is also applicable to determinations of whether an exclusion applies. *Id.*

The basic Policy contractually obligates Hartford to "pay for direct physical loss of or physical damage to Covered Property at the . . . scheduled premises . . . caused by or resulting from a Covered Cause of Loss." (P. A0014, Section A). The scheduled premises are undisputedly the Firm's office. The definition of Covered Property explicitly excludes money[2] and bank notes "except as provided in any Additional Coverages or Option Coverages." (P. A0014, A.2.c.). As to what constitutes a Covered Cause of Loss, the contract lists extensive exclusions and limitations. One limitation to coverage is that Hartford "will not pay for direct loss of . . . property that has been transferred to a person or to a place outside the 'scheduled premises' on the basis of unauthorized instructions." (P. A0015, A.4.a.2.). One exclusion to coverage is that Hartford "will not pay for physical loss . . . resulting from . . . dishonesty or criminal acts by you, any of your partners . . . employees . . . or anyone to whom you entrust the property for any purpose: (1) acting alone or in collusion with others; or (2) whether or not occurring during the hours of employment." (P. A0030, B.2.). The Firm acknowledges that the basic Policy excludes employee dishonesty and loss to the personal property of others, as laid out in the Special Property Coverage Form. (Doc. 24, p.1).

At issue is whether two Additional Coverages that the Firm purchased cover Sterling's monetary loss due to Sangiacomo's forging of Sterling's personal checks: the "Personal Property

---

[2]"Money" is defined as currency, coins and bank notes whether or not in use, as well as travelers checks, registered checks and money orders held for sale to the public. (P. A0038, G.10.a-b). The Complaint characterizes the loss of Sperling's funds as being money and the parties do not dispute this issue.

of Others" endorsement and the "Employee Dishonesty Coverage" endorsement. (P. A0091, A0087). The Firm also purchased an endorsement entitled "Super Stretch for Law Offices" that changes the Special Property form by creating a blanket coverage limit for Additional Coverages such as the Personal Property of Others and Employee Dishonesty Coverage, referring to each endorsement. (P. A0105).

**B. Additional Coverage for Personal Property of Others**

Hartford argues that the Super Stretch applies to modify the basic Policy to include Additional Coverage for the Personal Property of Others but still does not provide coverage for Sperling's loss because: (1) the Policy's definition of covered property at the premises specifically excludes any money or bank notes, (A.2.c); (2) the Policy's definition of covered losses specifically excludes any theft by employees; (B.2.e); and (3) the Policy specifically limits damage due to unauthorized transfer of property to outside of the Firm's premises, (A.4.a.2).

The "Super Stretch for Law Offices" changes the Policy's Additional Coverage section, A.5., to add within the blanket coverage limit that Hartford "will pay for direct physical loss of or physical damage to personal property of others that is in your care, custody or control." (P. A00105, A.1.d.). The "terms and conditions of the policy apply" to this Additional Coverage, which is also subject to the provisions of a different Form called "Personal Property of Others" except for the limit of insurance. (P. A00105, A.1.d.). That Personal Property of Others Form contains just a few sentences to specifically modify the Policy, stating that Hartford will "pay . . . for direct physical loss or physical damage by a Covered Cause of Loss to Personal Property of Others that is in your care, custody and control" although the "provisions of this Policy apply to the coverage stated in this endorsement, except as otherwise indicated." (P. A0091). Therefore, it is evident on both the face

7

of the Super Stretch and on the face of the Property of Others that the provisions of the base Policy still apply. Hartford argues that applying the provisions of the Policy means that the definition of Covered Property applies to the Personal Property of Others, in that money is excluded, and therefore any money that is in the care, custody and control of the Firm is excluded. However, Hartford's reading omits the clause that the exception for money is amended by "any Additional Coverages." Therefore, a plain reading of the contractual language is that any Additional Coverages that include money amend the definition of Covered Property. One such Additional Coverage, for Employee Dishonesty, specifically includes money as a Covered Property and therefore a proper reading of the contract includes money as a Covered Property.

Nonetheless, the Policy obligates Hartford to "pay for direct physical loss of or physical damage to Covered Property at the . . . scheduled premises . . . caused by or resulting from a Covered Cause of Loss." (P. A0014, Section A). Hartford argues that Sperling's loss was not a direct physical loss at the Firm's office and was not resulting from a Covered Cause due to both the limit on transfers to outside the office "on the basis of unauthorized instructions" and the exclusion for employee dishonesty. The Firm argues that notwithstanding the warnings that the Policy's provisions control the endorsements, the Property of Others fails to restate the limitations and exclusions to coverage from the Policy and therefore those provisions should not apply–namely, the limit for unauthorized transfers and the exclusion for employee dishonesty. However, neither that limit nor the exclusion contain the same qualification as the Policy definition of Covered Property that it can be amended by "any Additional Coverage." In addition, the Firm's reading would make the Property of Others a stand-alone policy for insurance, when in fact it is but a few sentences without any definitions, exclusions or limits. Critically, the endorsement provides no definition for

8

a "Covered Cause of Loss" although that term is provided in the base Policy as "risks of direct physical loss unless the loss is (a) excluded in Section B., Exclusions; or (b) limited in Paragraph A.4., Limitations; that follow." (P. A0015). In contrast, "Personal Property of Others" is not defined anywhere in the Personal Property of Others Form or in the base Policy or in the Super Stretch, nor is "care, custody or control."

Illinois courts interpret "care, custody and control" with a two-part test: "'[i]f the property damaged is within the possessory control of the insured at the time of the loss and is a necessary element of the work performed, the property is considered to be in the care, custody, or control of the insured.'" *Liberty Mut. Ins. Co. v. Zurich Ins. Co.*, 930 N.E.2d 573, 576-577 (Ill. App. Ct. 2010) (quoting *Caisson Corp. v. Home Indemnity Corp.*, 502 N.E.2d 1168 (Ill. App. Ct. 1986)). The owner's simultaneous access to the property at issue does not preclude a finding of care, custody or control. *Id.* (citing *Country Mutual Insurance Co. v. Waldman Mercantile Co.*, 430 N.E.2d 606 (Ill. App. Ct. 1981)); *see Essex Insurance Co. v. Soy City Sock Co.*, 503 F. Supp. 2d 1068, 1075 (C.D. Ill.2007). The Illinois Appellate Court recently ruled that a hotel guest's jewels and case in a hotel room's wall safe were within the "care, custody or control" of the hotel because the protection of customers' valuables constitutes an intrinsic part of the hotel's work as an innkeeper. *Liberty Mut. Ins. Co.*, 930 N.E.2d at 578. This was in stark contrast, the Appellate Court explained, from the case of *Bolanowski v. McKinney*, in which the plaintiffs were musicians who left their instruments at a bar between musical shows, and when a fire destroyed their instruments, they sued the bar who in turn submitted a claim to its insurance. *See Id.*; *Bolanowski v. McKinney*, 581 N.E.2d 345 (Ill. App. Ct. 1991)). The court in *Bolanowski* determined that it was not clear from the face of the underlying complaint that the allegations stated facts for damage to property within the care, custody, or control

9

of the defendants, which in that case would fall within the insurance contract's exclusion for other people's possession. 581 N.E.2d at 348. The court first recognized that a "care, custody, or control" exclusion is not uncommon in liability insurance policies. *Id*. The court then concluded that the underlying complaint did not indicate that the defendants had any type of possessory control over the musical equipment but merely alleged that the plaintiffs' equipment was left on the defendants' premises between shows. *Id.* at 349. The court stated that "[a]bsent allegations showing that defendants were accorded the right or duty to exercise some type of possessory control over the equipment, . . . the record does not clearly show that defendants had 'care, custody, or control' over plaintiffs' equipment at the time of the fire." *Id.*; *see Liberty Mut. Ins. Co.*, 930 N.E.2d at 578 ("We find *Bolanowski* distinguishable because the defendants there did not assume any duty to protect the plaintiffs' property."); *see also Essex Ins. Co. v. Soy City Sock Co.*, 503 F. Supp. 2d 1068, 1076 (C.D. Ill. 2007). Like in *Bolanowski*, and unlike in *Liberty Mutual*, the Complaint does not indicate that the Firm had any duty to protect Sperling's property. Although the Complaint alleges that the Firm secretary maintained custody of the blank checks and prepared them as authorized by Sperling, even when viewing these allegations as facts and drawing favorable inferences in favor of the Firm, such property is not a necessary element of the work performed and such work is not an intrinsic part of the Firm's work as a law firm. *See Liberty Mut. Ins. Co.*, 930 N.E.2d at 578. Therefore, under Illinois law this coverage does not extend to the loss of Sperling's personal property at the Firm's office.

Turning to a different term in the endorsement for Personal Property of Others, "Covered Cause of Loss," is a defined term from the Policy and therefore the term's definition and accompanying limits and exclusions are controlling. *See Filip v. North River Ins. Co.*, 559 N.E.2d

17, 18 (Ill. App. Ct. 1990) ("It is well accepted that . . . definitions contained within the Policy are controlling. This is particularly true when an insurance policy defines terms in a manner which differs from the ordinary understanding of the terms."); *Alpine State Bank v. Ohio Cas. Ins. Co.*, 941 F.2d 554, 560 (7th Cir. 1991) (same). In addition, the endorsement on its face expressly incorporated terms and conditions from the base Policy. Therefore, the limits and exclusions from the defined term were unambiguously and sufficiently incorporated by reference in both the Super Stretch and the Property of Others. *See West Bend Mutual Ins. Co. v. State of Illinois*, 929 N.E.2d 606, 614 (Ill. App. Ct. 2010) (incorporation by reference in an endorsement of a defined term suffices to include the contractual term in the endorsement). The term specifically excludes in Section B any physical loss due to employee dishonesty, stating for good measure: "[t]his exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered." (P. A0030, B.2). Theft by an employee is precisely what the Firm alleges occurred, and therefore would not be covered under the Property of Others endorsement.

And although the Firm argues that its allegations sufficiently state that the theft occurred at its office to fall within the "scheduled premises," the loss was effectively due to the withdrawal of funds that were transferred to Sangiacomo and others outside of the Firm's office when she cashed the unauthorized checks at the bank. This conduct falls within the limit that Hartford "will not pay for direct loss of . . . property that has been transferred to a person or to a place outside the 'scheduled premises' on the basis of unauthorized instructions." (P. A0015, A.4.a.2.). The Firm cites to *Columbia County Board v. Nationwide Ins. Co*, 719 N.E.2d 561 (Ohio App. Ct. App. 1998), for the proposition that this limit should not apply to the facts of this case. In *Columbia*, at issue before the court was whether a county treasurer's unauthorized investment and diversion of county

11

funds to his son, for which he pled guilty to an unlawful interest in a public contract, constituted "theft" that was covered by the county's insurance policy, or was specifically excluded as an act of employee dishonesty, or was specifically excluded as a transfer to a person outside the premises. *Id.* at 15. The Ohio Appellate Court reversed summary judgment on whether the transfer exclusion applied because it was "necessarily linked" to the unresolved issue of whether the diversion of county funds to unauthorized investments constituted theft, which was a factual matter to be decided on remand. *Id.* at 20. The court did advise that "if it is determined that a theft did occur, it would necessarily follow that the county experienced a loss of funds the moment the funds were improperly transferred or surrendered." *Id.* at 21. "The moment the county was deprived of lawful possession of the funds marks the moment in which the loss of covered property occurred." *Id.* That case, which does not bind this Court, fails to fully support the Firm's position that the exclusion for unauthorized transfers should not apply to its case, because the moment that Sperling was deprived of lawful possession of his funds is marked by Sangiacomo's cashing of the forged checks, which necessarily occurred outside the Firm's office. Although Sperling's money would fall within the Personal Property of Others as a Covered Property, it would not fall within a Covered Cause of Loss because the loss falls within the exclusion for transfers. *See also Private Bank & Trust Co. V. Progressive Cas. Ins. Co.*, 409 F.3d 814 (7th Cir. 2005) (strictly interpreting a bank's fraud policy "on premises" requirement for theft to have occurred at the bank in person at the bank and not over the phone to transfer unauthorized deposits of stolen funds to another account).

Based on the foregoing, the Complaint fails to state a claim that falls within the Additional Coverage for the Personal Property of Others because the Policy's definition of covered losses

specifically excludes any theft by employees, and specifically limits damage due to unauthorized transfer of property to outside of the Firm's premises.

### C. Additional Coverage for Employee Dishonesty

Hartford also argues that the Employee Dishonesty Coverage endorsement does not apply because: (1) even though the additional definition of covered property includes money, and the additional definition of covered losses includes dishonest acts of an employee, the employee had to intend to steal from the Firm and not from anyone else; and (2) the Policy limit that specifically limits damage due to unauthorized transfer of property to outside of the Firm's premises, (A.4.a.2), still applies.

The "Super Stretch for Law Offices" changes the Policy's Additional Coverage section, A.5., to add an Additional Coverage that Hartford "will pay up to $25,000 in any one occurrence as a Limit of Insurance to cover loss from employee dishonesty." (P. A0106, A.5). The "terms and conditions of the policy apply" to this Additional Coverage, (P. A0106), which is also subject to the provisions of a different Form called "Employee Dishonesty Coverage" except for the limit of insurance stated therein, (P. A0106, A.5.). That Employee Dishonesty Coverage Form adds that Hartford "will pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Causes of Loss" although the "provisions of this policy apply to the coverage stated in this endorsement, except as otherwise indicated." (P. A0087, A.). Covered Property "means 'money', 'securities', and other tangible property of intrinsic value and not otherwise excluded." (P. A0087, A.1.). Covered Causes of Loss "means dishonest acts committed by an 'employee', except you, whether identified or not, acting alone or in concert with other persons, with the manifest intent to (a) cause you to sustain loss; and also (b) obtain financial benefit . . . for (1) that

13

'employee'; or (2) any person or organization intended by the 'employee' to receive that benefit." (P. A0087, A.2.a-b.). Critically, "you" is defined as "the Named Insured shown in the Declarations", (P. A0014), in this

case, "Sperling & Slater, PC" (P. A0001).

The Complaint alleges that Sangiacomo took blank checks from Sperling's personal account and signed those checks with a stamp bearing Sperling's signature. Hartford argues that Sangiacomo therefore could not have intended to steal from the Firm, and that regardless of any intent, the funds were taken from a bank account and not from the scheduled premises, which is a limit that still applies because on both the face of the Super Stretch and on the face of the Property of Others, the provisions of the base Policy are incorporated by reference.

An analogous situation was addressed in *Monroe Guaranty Ins. Co. v. Radwan Brown & Co.*, PSC, 2011 U.S. Dist. Lexis 30263 (E.D. Ky. 2011), in which the court found no coverage existed. In that case, Mumford, an employee of an accounting firm, stole money from a client account. When the client terminated an individual's employment, Mumford kept the former employee on the payroll and directed the funds to her own bank account. The accounting firm attempted to obtain coverage for the theft of its client's funds under the employee dishonesty provision of its own property policy, which is similar to that contained in the Hartford Policy at issue here. *Id.* The court in *Radwan* concluded that the funds embezzled were not covered under the employee dishonesty coverage because they were in a bank account, not in the firm's premises or in the firm's accounts–a premises requirement located in the Policy's terms and conditions that were incorporated by reference despite their absence from the Employee Dishonesty section. *Id.* at 9-10. In that case, the endorsement had different requirements regarding "loss" and "use" than the Policy at issue here;

14

however, the court found that the embezzlement did not constitute a "direct loss" to the firm, despite the firm's reimbursement of the client funds, because the funds were never in the firm's "care, custody or control." The firm had the power only to direct the bank to directly transfer funds into the accounts of employees for payroll purposes. Similarly here, the Firm's position would require a strained reading of the endorsement that Hartford will "pay for loss of . . . Covered Property resulting directly from the Covered Causes of Loss," where Cause is defined as dishonest acts whose "manifest intent" was to cause the Firm to sustain loss, as constituting the Firm's liability coverage for theft of a third party's funds held at a bank in a personal account. In both instances, to make such a reading would transform a small section of a policy for property coverage into third-party liability coverage. *See Id.; see Lynch Properties, Inc. v. Potomac Ins. Co. of Illinois*, 140 F.3d 622, 629 (5th Cir. 1998) ("Although employee dishonesty policies may cover the loss of third-party property in the possession of the insured . . . these policies do not serve as liability insurance to protect employers against tortious acts committed against third-parties by their employees.");*Vons Companies, Inc. v. Fed. Ins. Co.*, 212 F.3d 489, 492 (9th Cir. 2000) (same); *see also First Nat'l Bank of Louisville v. Lustig*, 975 F.2d 1165, 1167 (5th Cir. 1992) (employee dishonesty policy insures against direct loss sustained by the insured, not liability). The *Radwan* analysis is persuasive, and Hartford's reading of the contractual language confined to the defined terms is reasonable and unambiguous.

The Complaint alleges, and Hartford does not dispute, that Sangiacomo stole funds but those funds were stolen from an account of the Sperlings, and not the accounts of or funds of the Firm. There is no allegation that the Firm was required to reimburse Sperling. Furthermore, it is without dispute that those funds were held at a bank and not at the Firm. The Firm argues that Sangiacomo's

15

"manifest intent" to cause the Firm to suffer a loss from her dishonest acts is established because it was "substantially certain" that the Firm would reimburse Sperling. The Firm cites *First Defiance Fin. Corp. v. Progressive Cas. Ins. Co.*, 688 F. Supp. 2d 703 (N.D. Ohio 2010) *aff'd*, 10-3943, 2012 WL 3104517 (6th Cir. Aug. 1, 2012), in which the issue was whether a fidelity bond covered a bank employee's theft from customer brokerage accounts. Like Hartford, the insurance company argued that the bond would only cover a theft from the bank's own accounts, even though the bank had reimbursed its customers for the stolen funds. The court held that "manifest intent normally exists where the employee's action benefitted the employee at the expense of the employer, as in embezzlement." *Id.* at 708 (citing *FDIC v. St. Paul Fire & Marine Ins. Co.*, 942 F.2d 1032, 1035 (6th Cir. 1991) ("Embezzlement is a zero-sum game. For the employee to win, the employer must lose.")). Recently, the Sixth Circuit upheld the ruling and found manifest intent because "[i]n view of the fiduciary relationship between [the bank] and its clients, a theft from client accounts by a [bank] employee would be substantially certain to cause losses to the bank." *First Defiance Fin. Corp.*, 2012 WL 3104517 at *5. The bank "contracted with its clients to manage their investment accounts as a fiduciary, which not only gave them an interest in the misappropriated property but also made them responsible for it." *Id.* at *5, *see also Lynch Properties, Inc. v. Potomac Ins. Co. of Illinois*, 140 F.3d 622 (5th Cir. 1998), (bookkeeper's misappropriation of funds from personal account of mother of owner of insured company was not within company's employee dishonesty coverage because business had no relationship to those accounts despite bookkeeping). That case is distinguishable, then, because in this case the Firm did not contract with Sperling to manage his account as a fiduciary, therefore the Firm did not have an interest in the misappropriated funds and did not make the Firm responsible for it. It could not be "substantially certain" that the Firm would

16

suffer a loss when Sangiacomo stole from Sperling's personal bank account. Therefore, the conduct alleged in the Complaint cannot constitute a claim under the language of the contract.

Even if, arguably, some question of fact could remain as to the manifest intent of Sangiacomo, it is undisputed that the loss of funds at issue in the Complaint did not occur at the insured premises, thereby precluding coverage due to the limitation on loss of property transferred outside the premises on the basis of unauthorized instructions. (P. A0015). The Firm relies on the defense that enforcement of the premises requirement would be to "elevate form over substance," citing to *Baker &Getty Financial Services, Inc v. National Union Fire Ins. Co.*, 93 B.R. 559 (USBC N. Dist Ohio 1988). However, the court in *Baker* was referring to misappropriated funds in bank accounts belonging to three companies that–in substance–constituted a single corporate operation. *Id.* at 564. The Bankruptcy Court disregarded their separate corporate identities to "prevent inequitable consequences and more nearly match the result to the reality of the surrounding circumstances." *Id.* Here, the reality of the circumstances as alleged in the Complaint are undisputed: the funds were in Sperling's personal bank account and the funds were misappropriated by Sangiacomo cashing forged checks. Therefore, form and substance control in this case. *See also Private Bank & Trust Co.*, 409 F.3d at 817. Reading the contract for its plain and ordinary meaning, leads to the conclusion that Sangiacomo's unauthorized withdrawal of funds at the Bank falls outside of the coverage afforded to the Firm by the Policy and its Additional Coverages. Enforcement of the terms of the contract, as written, indicates that the allegations in the Complaint could not give rise to a claim under the Additional Coverage for Employee Dishonesty.

    **D. Breach of Contract**

The Firm argues that if the Policy is enforced by this Court as written, the coverage provided is illusory. Under Illinois law, a policy that provides real coverage for some losses, even while excluding others, is not illusory. *See LibertyMutual Fire Ins. v. Statewide Insurance Co.*, 352 F.3d 1098, 1101 (7th Cir. 2003). A property policy such as this insures against loss of tangible property such as furniture, artwork and other items that may belong to its employees and are located on premises. Furthermore, Employee Dishonesty could cover claims of theft by an employee of petty cash and other funds that may be held on premises. It would require a strained reading, and generous interpretation, to view the Policy as a whole as the Firm's property coverage solely or even principally to protect itself from loss of its employees' personal funds held in bank accounts. Therefore, the Policy with its Additional Coverages and limitations and exclusions, does not provide coverage that is merely illusory. Based on the foregoing analysis upon which the Court concludes that the Additional Coverages do not cover the allegations in the Firm's Complaint, it necessarily follows that Hartford did not breach the contract in denying the Firm's claim.

### E. Bad Faith Under Illinois Insurance Law

The Firm's Complaint alleges bad faith against Hartford under Section 215 ILCS 5/155 for vexatious and unreasonable conduct or delay in addressing a claim. The Complaint does not allege any conduct on the part of Hartford other than its denial of the Firm's claim. As analyzed above, the insurance contract does not provide coverage for Sangiacomo's theft of Sperling's personal funds from his personal bank account. The Complaint fails to state a claim because its allegations, coupled with the analysis above that there was no wrongful denial of coverage, reveals that Hartford properly denied coverage and therefore there was no bad faith in denying coverage. *See Malaker v. Cincinnati Ins. Co.*, 09 C 1140, 2011 WL 1337095, *10 (N.D. Ill. Apr. 7, 2011).

## IV. CONCLUSION

For the reasons stated above, the Court grants Hartford's Motion to Dismiss the Complaint.

                                                                            _____
                                                                            Virginia M. Kendall
                                                                            United States District Court Judge
                                                                            Northern District of Illinois

Date:    September 5, 2012